GROUP HEALTH COOPERATIVE OF EAU CLAIRE, Group Health Cooperative of South Central Wisconsin and Family Health Plan Cooperative, Plaintiffs-Appellants,†

v.

WISCONSIN DEPARTMENT OF REVENUE, Cate Zeuske and the City of Glendale, Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 98–1264. Submitted on briefs May 11, 1999.—Decided August 10, 1999.*

(Also reported in 601 N.W.2d 1.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *von Briesen, Purtell & Roper, S.C.* by *Thomas P. Guszkowski, Terry E. Nilles* and *Brian L. Pierson* of Milwaukee.

On behalf of the defendants-respondents Wisconsin Department of Revenue and Cate Zeuske, the cause was submitted on the brief of *James E. Doyle*, attorney general by *Maryann Sumi*, assistant attorney general.

On behalf of the defendant-respondent City of Glendale, Wisconsin, the cause was submitted on the brief of *Fuchs, Snow, O'Connell & DeStefanis, S.C.* by *John F. Fuchs*, city attorney and *Jennifer R. Evans*, assistant city attorney of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. Group Health Cooperative of Eau Claire, Group Health Cooperative of South Central Wisconsin, and Family Health Plan Cooperative, (hereinafter collectively "GHC") appeal from a summary judgment granted in favor of the Wisconsin Department of Revenue, Cate Zeuske and the City of Glendale, Wisconsin, regarding the tax liabilities of GHC. GHC claims that the trial court erred when it granted summary judgment because: (1) the challenged portions of 1995 Wis. Act 27 are unconstitutional; and (2) Glendale should have exempted Family Health Plan from paying property tax in 1994 because Family Health Plan Cooperative was preparing the property for a benevolent purpose. Because the challenged portions of the act are not unconstitutional and because the Glendale property

848

was not being used at the time of assessment for an exempt purpose, we affirm the judgment.

## I. BACKGROUND

In 1995, the Wisconsin legislature passed certain revisions affecting the tax liability of entities that offer health maintenance organizations. The specific challenged provisions were revisions to three statutes. Section 70.11(4) and (4m), STATS., now provides that general property tax exemptions are not available to "an organization that is organized under s. 185.981 or ch. 611, 613 or 614[, STATS.,] and that offers a health maintenance organization . . . or a limited service health organization." Similarly, §§ 71.26(1)(a) and 71.45(1), STATS., remove corporate income tax exemptions for income of "cooperative sickness care associations organized under s. 185.981, or of a service insurance corporation organized under ch. 613, that is derived from a health maintenance organization."

GHC, comprised of nonprofit, benevolent, cooperative sickness care associations that provide health care services to the community, filed an action in July 1996, challenging the validity of the above-referenced portions of 1995 Wis. Act 27. GHC sought a refund of taxes paid and a judicial declaration that the challenged provisions were invalid. GHC also challenged the Glendale assessment of property tax for a vacant parcel of land owned by Family Health Plan.

The Wisconsin Department of Revenue and the City of Glendale filed motions for summary judgment, which the trial court granted. GHC now appeals.

## II. DISCUSSION

This case involves a constitutional challenge to portions of the budget bill that removed tax exemptions

for benevolent organization-run health maintenance organizations. GHC argues that the challenged portions are unconstitutional because: (1) they violate article IV, section 18 of the Wisconsin Constitution; (2) they violate article IV, section 31 of the Wisconsin Constitution; and (3) they violate the equal protection provisions of both the Wisconsin and the United States Constitutions. GHC also argues that Glendale should not have assessed property taxes against Family Health Plan (FHP) on January 1, 1994, because FHP was entitled to an exemption as a benevolent association.

When reviewing a grant of summary judgment, we employ the same methodology as the trial court, the methodology which is set forth in § 802.08(2), STATS. *See Jeske v. Mount Sinai Med. Ctr.*, 183 Wis. 2d 667, 672, 515 N.W.2d 705, 707 (1994). Where there are no material facts in dispute, as here, we must determine independently whether the movant is entitled to summary judgment under the law. *See id.* We begin our analysis with the presumption that the challenged provisions "are constitutional and that they must be upheld unless they are proven unconstitutional beyond a reasonable doubt." *State v. LaPlant*, 204 Wis. 2d 412, 418, 555 N.W.2d 389, 391 (Ct. App. 1996).

A. *Constitutional Challenge, Article IV, Section 18, Wisconsin Constitution.*[1]

----

[1] Because WIS. CONST. art. IV, § 18 " 'assess[es] the constitutionality of the process in which the legislation was enacted' instead of 'the constitutionality of the substance of [the] legislation,' the presumption of constitutionality does not apply." *Krug v. Zeuske*, 199 Wis. 2d 406, 413, 544 N.W.2d 618, 621 (Ct. App. 1996) (quoted source omitted) (brackets in *Krug*).

GHC first claims that the enactment violates section 18 of the Wisconsin Constitution, which provides: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." GHC argues that the challenged provisions constitute a private bill and thus should not have been "smuggled" into the budget bill. GHC argues that the bill creates a classification so limited in scope as to constitute a private law.[2] We reject this claim.

"Sec. 18, art. IV of the Wisconsin Constitution is designed to protect the public from legislative enactment of statutes whose effect is unknown to legislators and to the people of the state . . . ." *Soo Line R.R. Co. v. DOT*, 101 Wis. 2d 64, 72, 303 N.W.2d 626, 630 (1981). Challenges pursuant to this section include both cases under which the challenged legislation is specific on its face to a particular person, place or thing and cases challenging legislation which, while not specific on its face, creates a classification that is so limited in scope as to constitute a private or local law. *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 144 Wis. 2d 896, 908–09, 426 N.W.2d 591, 597–98 (1988). GHC claims the legislation here falls into the latter category.[3] We apply a five-part test to determine whether a

---

[2] GHC devotes a substantial portion of its brief to allegations that Blue Cross Blue Shield United of Wisconsin actually provided the impetus for the challenged legislation, and that when the legislation was introduced as a separate bill, independently titled, it was rejected. Even if these allegations prove true, such facts do not impact on our analysis.

[3] Cases falling into the former category are reviewed differently. *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 144 Wis. 2d 896, 911–12 & n.5, 426 N.W.2d 591, 598–99 & n.5 (1988).

law, general on its face, creates a classification in violation of section 18:

> First, the classification employed by the legislature must be based on substantial distinctions which make one class really different from another.
> Second, the classification adopted must be germane to the purpose of the law.
> Third, the classification must not be based on existing circumstances only. Instead, the classification must be subject to being open, such that other [members] could join the class.
> Fourth, when a law applies to a class, it must apply equally to all members of the class.
> . . . [Fifth,] the characteristics of each class should be so far different from [the others] so as to reasonably suggest . . . the propriety . . . of substantially different legislation.

*Brookfield*, 144 Wis. 2d at 907–08, 426 N.W.2d at 597.[4] The five-part test here is satisfied and, therefore, we reject GHC's claim that removal of its tax exemption violates article IV, section 18 of the Wisconsin Constitution.

The first part of the test is satisfied because there is a rational basis for the classification. Removing the tax exemption previously granted to GHC, but not to all other health maintenance organizations (HMOs), does not create a classification, but actually removes

---

[4] Our supreme court also recognized a sixth part to this test "when the legislation is curative in nature." *Brookfield*, 144 Wis. 2d at 908, 426 N.W.2d at 597. The sixth rule required any curative change to apply "equally to all members of the class," *id.*, before the law would be considered general. The challenged provisions in the instant case, however, are not curative in nature and, therefore, we need not address the sixth part of the test.

one. The bill dissolves the distinct class created by the exemption and places all entities in the HMO business on the same footing regarding taxation. Thus, there is a rational basis for the legislature's enactment of the revisions.

The second part of the test is also satisfied. Although the purpose was not specifically expressed in the legislation, some of the legislative submissions clearly indicated that the purpose of the law was to "level the playing field" and to remove tax exemptions once entities such as GHC were up and running. The legislature chose to remove a tax exemption for activities under which other groups were incurring taxation. Such rationale reasonably upholds the legislative determination. *See Sambs v. City of Brookfield,* 97 Wis. 2d 356, 371, 293 N.W.2d 504, 511 (1980). Thus, the classification is germane to the purpose of the law.

The third, fourth and fifth parts of the test are also met. The class is open because it applies to any organization offering an HMO now or at any time in the future. The law applies equally to each member of the class because there are no exceptions within the class. Finally, the characteristics of the organizations affected by the legislation are sufficiently distinct from the characteristics of other organizations to justify different treatment. The organizations affected by the legislation are in the business of offering HMOs. This is sufficient to separate this group from other organizations. GHC argues that the HMO classification is too broad. We disagree. The legislature has the ability to sweep organizations within a particular classification given the criteria that the legislature believes to be significant. Moreover, the enactment does not create a new tax, but removes a tax exemption.

■ Because the five-part test is satisfied, the new legislation does not constitute a private law that requires enactment separately. Therefore, its enactment as a part of the budget bill did not violate article IV, section 18 of the Wisconsin Constitution.[5]

*B. Constitutional Challenge, Article IV, Section 31, Wisconsin Constitution.*

GHC also challenges the enactment under article IV, section 31 of the Wisconsin Constitution. This section prohibits "[a]ny special or private laws . . . [f]or assessment or collection of taxes or for extending the time for the collection thereof." WIS. CONST. art. IV, § 31(6). Companion section 32 provides that the legislation is valid if it is "general" in nature. *See* WIS. CONST. art. IV, § 32 ("legislature may provide by general law for the treatment of any subject for which lawmaking is prohibited by section 31").

■ The same five-part test utilized above applies here. *See Libertarian Party v. State*, 199 Wis. 2d 790, 803, 546 N.W.2d 424, 431 (1996). As noted above, the test is satisfied. Further, the challenged law is "general" in

---

[5] GHC argues that its federal tax status as a charitable organization should impact on its Wisconsin tax status. GHC claims that because it is granted a federal tax exemption, it should also be entitled to the same special treatment from Wisconsin. We cannot declare legislation unconstitutional based on this premise. The Wisconsin legislature is granted the authority to make taxation decisions. *See Janesville Community Day Care Ctr., Inc. v. Spoden*, 126 Wis. 2d 231, 233, 376 N.W.2d 78, 80 (Ct. App. 1985). Our job is limited to judging the constitutionality of those decisions. *See Flynn v. Department of Admin.*, 216 Wis. 2d 521, 528–29, 576 N.W.2d 245, 248 (1998). .

nature, that is, it applies equally to all organizations offering HMOs throughout Wisconsin. Therefore, there is no constitutional violation under article IV, section 31. *See Colombia County v. Wisconsin Retirement Fund*, 17 Wis. 2d 310, 324, 116 N.W.2d 142, 149 (1962).

## C. *Constitutional Challenge, Equal Protection.*

GHC also challenges the legislation on the basis that it violates the equal protection guarantees of both the Wisconsin and the United States Constitutions, article I, section 1, of the Wisconsin Constitution, and the Fourteenth Amendment to the United States Constitution.[6] We reject this claim.

In addressing whether the new legislation violates the guarantees of equal protection under both the state and federal constitutions, we note that the guarantee of equal protection under the Wisconsin Constitution is substantially equivalent to the guarantee of equal protection under the Fourteenth Amendment to the United States Constitution. *See Treiber v. Knoll*, 135 Wis. 2d 58, 68, 398 N.W.2d 756, 760 (1987). We therefore apply the same legal analysis to test the constitutionality of the statute under the equal protection guarantees of either constitution.

---

[6] Article I, § 1, of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

The equal protection clause included in the Fourteenth Amendment to the United States Constitution, states in pertinent part: "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

The test to be applied in analyzing an equal protection challenge has been stated often: unless the challenged statute affects a "fundamental right" or creates a classification based on a "suspect criterion," the standard used in reviewing the constitutionality of the statutory classification is the "rational basis" test. *See id.* at 70, 398 N.W.2d at 760.

█

In this case, we apply the rational basis test because the challenged provisions neither affected a "fundamental right" nor created a classification based on a "suspect criterion." As noted above, the legislature had a rational basis in removing the tax exemption for GHC and others similarly situated. This legislation does not run afoul of equal protection guarantees and, in fact, operates to correct an exemption that may have been subject to an equal protection challenge because it excluded from taxation one classification of organizations performing services, but included others. Thus, we reject the equal protection challenge.

## D. Glendale Tax Assessment.

Finally, we address GHC's challenge to the Glendale tax assessment imposed on January 1, 1994, involving a vacant parcel that FHP purchased to construct a health clinic.[7] GHC argues that because FHP was "readying" the land for a benevolent purpose, the assessment was improper. Glendale responds that

---

[7] To the extent that GHC is also challenging subsequent tax assessments by Glendale after enactment of the challenged legislation, we need not address the challenges because we have rejected GHC's claim that the legislation removing its tax exemption was unconstitutional. Accordingly, we address only whether the tax assessment levied on FHP when it was still afforded tax exempt status was proper.

FHP was not entitled to a tax exemption on that date because the land assessed was wholly vacant and was not being used exclusively by FHP for benevolent purposes. The trial court ruled in Glendale's favor. We agree that the tax assessment was allowed.

In resolving the dispute, we note that "[t]he burden of showing that property is exempt from taxation is on the [party] seeking the exemption." *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). In 1994, § 70.11(4), STATS., provided a tax exemption for "[p]roperty owned and used exclusively by . . . benevolent associations." FHP is a benevolent association whose benevolent purpose is to provide health care services to groups and individuals through its health centers.

GHC argues that this case is governed by *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 320–23, 254 N.W.2d 268, 273–75 (1977). In *Family Hospital*, the court ruled that although the nursing home was not yet operational, it was entitled to a tax exemption on the assessment date because it was "readying" itself for its benevolent purpose. *See id.* Glendale argues, however, that the instant case is more in line with *Dominican Nuns v. City of LaCrosse*, 142 Wis. 2d 577, 579–81, 419 N.W.2d 270, 271–72 (Ct. App. 1987). In *Dominican Nuns*, this court ruled that tax assessment was proper because the nuns had moved out of the convent, leaving it vacant, and were simply maintaining it with the intent to sell. *See id.*

GHC asserts that FHP was using the property exclusively for its benevolent purpose as evidenced by the following facts: FHP paid $183,000 for allowing the subdivision, purchase and use of the property; FHP conducted an environmental audit of the property; FHP recorded utility, parking, sidewalk and driveway

easements on the property; FHP submitted site and landscape plans to Glendale; and, in December 1993, FHP applied for a building permit.

Glendale responds that, in assessing the property, it must determine the status of the property on the assessment date. Glendale asserts that on the assessment date, January 1, 1994, the property was wholly vacant and unoccupied, construction for the health center had not yet commenced, and on this basis, it determined that FHP was not using the property exclusively for its benevolent purpose.

Based on the totality of the circumstances, we conclude that Glendale's tax assessment was proper. It is clear that at the time of the assessment, the property was not being used exclusively for FHP's benevolent purpose of providing health care to its members. Further, the facts here are not analogous to *Family Hospital*, where the "readying" rule arose.[8] Although there was some indication that FHP was preparing to construct a health center on the vacant land, this was insufficient to qualify for tax exemption. *See Dominican Nuns*, 142 Wis. 2d at 579, 419 N.W.2d at 271 (" 'Statutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability.' ") (quoted source omitted).

---

[8] The facts here are also not analogous to *Dominican Nuns v. City of LaCrosse*, 142 Wis. 2d 577, 419 N.W.2d 270 (Ct. App. 1987), wherein this court determined that the nuns who vacated their convent, and were maintaining it for the purposes of sale, could be taxed because the convent was not being used exclusively for a benevolent purpose. *See id.* at 579–81, 419 N.W.2d at 271–72. The only similarity between the facts in *Dominican Nuns* and the case before us is that neither property was being used exclusively for a benevolent purpose.

FHP's situation was very different from the situation in *Family Hospital*. *Family Hospital* was fully constructed and equipped on the assessment date. *See Family Hospital*, 78 Wis. 2d at 323, 254 N.W.2d at 274–75. It was not operational because it was not yet fully staffed. *See id.* at 323, 254 N.W.2d at 275. FHP, on the other hand, on its assessment date, had not yet even commenced construction of its health center. When our supreme court used the term "readying" in *Family Hospital*, we do not believe it intended that term to be stretched to the extent that GHC attempts.

Accordingly, we reject GHC's claim that FHP was entitled to a tax exemption on January 1, 1994. We conclude that Glendale's tax assessment on that date was proper because the property was not being exclusively used for FHP's benevolent purpose.

*By the Court.*—Judgment affirmed.